## WILLIAM BOYNTON *vs.* NATHANIEL BODWELL.

A notice given by a tenant at will to terminate the tenancy, fixing no time when he will quit, is defective ; but the landlord may waive the informality; and evidence that, after the notice, he tried to induce the tenant to stay, by an offer to lower the rent and to make improvements, and that he sent a third person to repeat the proposition, and that the tenant left, and the keys were sent to the landlord, he at no time objecting to the insufficiency of the notice, is evidence sufficient to warrant the jury in finding such waiver; and there being evidence to show that the tenant left because of the obstruction of the light by the erection of a neighboring wall, evidence that, at the time of the letting, the landlord said there was no danger of such an obstruction, is admissible upon the question of waiver.

In an action to recover rent from a tenant at will, evidence that the tenancy had terminated, and that the landlord had waived the insufficiency of a defective notice of an intention to quit, is admissible under a general denial in the answer.

In an action for rent, against a tenant at will who had given a defective notice to quit, October 23, and paid the rent to November 1, the day upon which it was due, the jury finding that the defect in the notice had been waived, and that the rent was payable monthly, the court are justified in ordering a verdict for one month's rent.

ACTIONS OF CONTRACT, one to recover for the use and occupation of the two upper floors of premises numbered four, Lin-

coln Street, Boston, from November 1, 1871, to February 1, 1872; the other for the use and occupation of the same premises from February 1, 1872, to November 1, 1872.

The first writ was dated February 10, 1872, and the second December 5, 1872. The answer in each case was, that the defendant denied " each and every allegation in the plaintiff's declaration." Both cases were tried together.

At the trial in the Superior Court, before *Lord*, J., the defendant conceded that he was liable for $66.66 and interest from the date of the writ, being rent from November 1, to December 1, 1871.

The plaintiff testified that he let the premises to the defendant, under an oral agreement, for five years from May 1, 1871, at a yearly rent of eight hundred dollars, payable quarterly on the first day of each quarter, after May 1, 1871; that the defendant went immediately into the occupation of the premises, and on October 23, 1871, sent the plaintiff a written notice, of which the following is a copy: " Boston, October 23, 1871. Mr. Boynton — Dear Sir : — I find that the building of the store in the rear of the rooms that I occupy has ruined the light for my business, and I shall be obliged to leave them. This is to notify you that I shall vacate and deliver up to you the two rooms I now occupy, being the two upper floors of store No. 4 Lincoln Street, Boston. Yours truly, N. Bodwell."

The plaintiff further testified that he did not know when the defendant left the premises; that he demanded the rent for the quarter ending February 1, 1872, of the defendant when due, who refused to pay it, and thereupon the bill was placed in the hands of his attorneys for collection, and that no part of the rent claimed in the actions had been paid ; that the defendant called at his office some time after the notice was received, and offered to compromise the matter by paying $100, which he refused to accept, and informed him that his notice was not legal and sufficient, and that he should hold him responsible for the rent , that he never consented or agreed to allow him to leave the premises, and never took possession of them, nor entered, nor relet, nor offered to relet them during the period for which a

recovery was sought in these actions; that he had never assumed or exercised any control over them until November, 1872, when he let them to other parties, and that the defendant has never returned the keys.

On cross-examination the plaintiff testified that, after he received the notice, he went to see the defendant and tried to induce him to stay, and offered to take off $100 from the rent rather than to have him leave, and offered to put in more windows to improve the light, so as to suit him; that he made out in his own handwriting three bills or receipts, each for a month's rent, but that he did not present them till the first of August, 1871, when they were all paid together; that he often made out his bills monthly when the rent was payable quarterly; that only one bill or receipt was made out for the quarter ending November 1, 1871, which was paid in instalments indorsed on the bill as follows: " December 9th, 1 month's rent, $66.66." " December 30th, paid $40, for rent." " January 13th, 1872, received balance, $93.34; " that the last payment was made to the plaintiff's attorneys, in whose hands the bill had been placed for collection. The plaintiff also testified upon cross-examination that November 1, 1871, he made out the bill dated November 1, 1871, and presented it to the defendant, at 4 Lincoln Street, on the 1st, 2d, or 3d day of November, 1871, but that he could not recollect whether or not he then talked with him about the notice, but there was some conversation about changing the defendant's sewing machines so as to get more light.

The plaintiff called Samuel T. Eames, the owner of the premises, of whom the plaintiff hired, who testified that the plaintiff told him that the defendant was going to leave; that the plaintiff wished he would see the defendant and induce him to stay; that he went to see the defendant and asked him why he was going to leave, and the defendant said he could get a cheaper rent, and also said something about the light; that he then told the defendant that the plaintiff had authorized him to say that he would take off $100 if he would stay; that the defendant did not say definitely whether he would leave, but when the witness left him, he thought the defendant would stay

The defendant testified that he was a manufacturer of ladies' fine shoes and slippers; that he required light rooms to carry on his business in; that he hired the premises in April, 1871, at $800 a year, payable monthly, the rent to begin May 1, 1871; that at the time he hired the rooms the space or lot in the rear was open; that he thought they might build on Summer Street and cut off his light, and he spoke to the plaintiff about it, who said there was no danger of any building being put up so as to affect the light; that he moved into the premises the last of April, 1871; that, after he moved in, a building was erected in the rear, eight or ten feet distant from the rooms occupied by him, and extending three or four feet above the building in which his rooms were; that this building obstructed the light of his rooms so that he could not carry on his business there; that he could use but one half of his rooms when he gave his notice; that about a week after he gave the notice, the plaintiff came to see him and seemed anxious to have him stay, and said he would take off $100 a year from the rent and would put in more windows if he would stay; that he told the plaintiff that that would make it no better; that he told him he would try and alter or change his sewing machines and see if he could use the rooms, but found he could not; that after that, Mr. Eames came to see him and tried to induce him to stay, and said that the plaintiff said he would take off $100 if he would stay; that he vacated the premises about the middle of November, 1871; that he placed the keys to the rooms in an envelope and sent them by a boy then in his employ, to the plaintiff's office in Boston; that the plaintiff never made any objection to the notice; that after he had been sued he saw the plaintiff at his office; that he went to see if he could compromise with him, but he swore he would not take anything but the whole.

Upon cross-examination the defendant testified that the plaintiff said nothing about the notice in any way at any time; that he did not leave because he could get a cheaper rent, but on account of the light; that he objected to the bill or receipt dated November 1, 1871, because it was not made out in monthly bills, but afterwards paid the bill in instalments, which were indorsed on it.

The defendant called Thomas O. Potter, a tenant of the plaintiff, occupying rooms adjoining those occupied by the defendant, who testified that soon after the defendant left the rooms the witness tried to hire them of the plaintiff, and afterwards spoke to him two or three times about hiring them; that he wanted the rooms, and in October, 1872, he hired them of the plaintiff, and moved in the last of October, but the rent was not to begin till November 1; that when he first went to see the plaintiff about the rooms he said something about not having got through with the defendant.

The plaintiff on being recalled, testified that when the defendant hired the rooms, he did not agree that he should have good light; that he did not know who owned the land the rear building was built on; that he had no definite application for the rooms till November 1, 1872. Upon cross-examination he said that he knew that Mr. Potter was in want of rooms, and tried to rent him other rooms.

The plaintiff objected to the defendant's evidence as to light, and also as to the evidence tending to show a waiver of notice, on the ground that such evidence was inadmissible under a mere general denial in the defendant's answer, and further objected to the evidence as to light, for the reason that no agreement for light, express or implied, had been shown between the parties; but the court admitted the evidence under objection.

Upon the foregoing evidence the plaintiff requested the court to rule and instruct the jury as follows :

" 1. There is no sufficient legal evidence to show any waiver of notice or of the defect in the notice, or to show a resumption of possession of the premises on the part of the plaintiff, or to show in any manner a termination of the defendant's tenancy at any time during the period for which the plaintiff seeks to recover in these actions, or to show that the defendant has been discharged in any manner from his liability to pay the rent claimed by the plaintiff during said period. 2. It is immaterial whether the rent was payable monthly or quarterly. 3. Under a general denial, evidence tending to show a waiver of notice or a resumption of possession on the part of the plaintiff, or that the

tenancy has in any manner been determined, is incompetent **and** immaterial and is not to be considered by the jury."

But the court refused to so rule and instruct the jury, but instructed them that the notice in itself was insufficient, and under instructions, which were not excepted to, as to what would be a waiver of a strict legal notice to quit, requested the jury to answer the two following questions :

" 1. Was the conduct of the plaintiff in his interviews with the defendant such as reasonably and properly to lead the defendant to understand that the plaintiff waived any irregularity in the notice of October 23, and did he so understand ?

" 2. Was the agreement between the parties that the rent should be payable monthly or quarterly ? "

To these questions the jury answered " Yes " to the first, and " Monthly " to the second, and thereupon the court ordered a verdict for the plaintiff, for $66.66, and interest from the date of the writ in the first suit, and a verdict for the defendant in the second suit, and the plaintiff alleged exceptions.

*H. H. Currier*, for the plaintiff.

*C. G. Keyes*, for the defendant.

MORTON, J. It appeared at the trial that the plaintiff let the premises in question to the defendant, by an oral agreement, for five years from May 1, 1871. This created a tenancy at will only. Gen. Sts. *c.* 89, § 2. There was conflicting testimony as to whether the rent was payable quarterly or monthly ; but the jury having found that it was payable monthly, that fact is to be taken as settled. It follows, therefore, that either party could determine the estate at will by one month's notice in writing given for that purpose to the other party. Gen. Sts. *c.* 90, § 31. The defendant undertook to terminate the tenancy by the written notice, a copy of which is set out in the bill of exceptions. This notice was defective and informal, in that it did not state the time when he should vacate and deliver up the premises. *Currier* v. *Barker*, 2 Gray, 224. The defendant relied upon proof that the plaintiff had waived any informality or irregularity in the notice, and accepted it as sufficient to terminate the tenancy on the first of December, 1871. If the plaintiff, knowing that the notice

was intended to terminate the tenancy on that day, waived any objection to its informality, or by his words and conduct led the defendant reasonably and properly to understand that he waived such informality, he cannot now object that the notice was insufficient.

The instructions of the presiding judge as to what would constitute such waiver are not stated in the bill of exceptions. They were not excepted to, and we must assume that they were correct and appropriate. But the plaintiff asked the court to rule that there was not sufficient evidence to prove a waiver by him. We are of opinion that the presiding judge properly refused this ruling. The testimony was conflicting, and it was the exclusive province of the jury to decide upon the credibility of the witnessess and the weight of the evidence. The defendant testified that, soon after the notice was sent, the plaintiff called and had an interview with him in regard to his vacating the premises; that the plaintiff made no objection to the notice, but tried to induce him to remain by offering to reduce the rent and to make some improvements in the premises; that the plaintiff afterwards sent Eames to him to make the same proposition; that he left in the middle of November and sent the keys to the plaintiff, and that the plaintiff never objected to the sufficiency of the notice. It was for the jury to say whether the fair inference from all the evidence was that the plaintiff waived any informality in the notice.

We are also of opinion that it was competent for the defendant to show, under the pleadings, a determination of the tenancy, and a waiver of notice. The answer is a general denial. The fact that the tenancy was terminated on December 1, is not a substantive fact in avoidance of the action. Its purpose and effect was to meet and disprove the plaintiff's allegation, and not to avoid or discharge his cause of action. *Warren* v. *Ferdinand*, 9 Allen, 357. *Verry* v. *Small*, 16 Gray, 121. The evidence of the conversation between the parties, at the time the lease was made, as to the light of the premises, was admitted as bearing upon the question of waiver. For that purpose it was competent.

The ruling that upon the facts found by the jury the plaintiff was entitled to a verdict for sixty-six dollars and sixty-six cents with interest was correct. The effect of the waiver found by the jury was, that the notice was to be treated as though it had specified the first of December as the time when the tenancy was to terminate. The rent being payable monthly, it follows as matter of law that after such a notice the tenancy was determined on that day, and the plaintiff's right to recover rent then ceased.

*Exceptions overruled.*