WILLIAM E. WHICHER *vs.* SIMON G. COTTRELL.

SAME *vs.* SAME.

Suffolk.   January 15, 16, 1896. — February 28, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Landlord and Tenant — Notice of Termination of Tenancy — Waiver of Defect in Notice — Effect of Landlord's Action.*

A notice in writing by a tenant at will of a store to his landlord, that "from this date you will please collect your rent from B., as I have disposed of my store to said B.," is not a compliance with Pub. Sts. c. 121, § 12; and if, after receiving the notice, the landlord continues to make out bills against the tenant monthly for rent, and to attempt to collect them at the store as usual, going there frequently and asking if there is any money for him, and receiving and crediting to the tenant whatever payments he receives there from B., the tenant will not be justified in assuming that the landlord had released him, or in believing that the landlord had waived the defects of the notice.

Although a landlord, after he has received a notice from his tenant at will intended to terminate the tenancy, but which is insufficient for that purpose, receives payments of rent from the vendee of the business conducted upon the premises, if he does not treat the vendee as his tenant, but continues to claim that the vendor is the tenant, and makes out bills for rent against him, a finding will not be justified, in an action for the rent, that the tenancy was terminated by transfer of the tenancy and possession with the landlord's knowledge and acquiescence.

Two ACTIONS OF CONTRACT, for use and occupation of a store in Boston, the first being to recover rent from August to December, 1893, inclusive, and the second for the months of January and February, 1894. The cases were tried together in the Superior Court, before *Blodgett*, J., who reported them for the determination of this court, in substance as follows.

The plaintiff testified that he first let the premises in question, 34 Dearborn Street, to the defendant in 1881 or 1882, under an oral agreement, at $37.50 per month; that in August, 1893, the defendant was his tenant; that it was his custom to collect the rent every month at the store; that he collected $32.50 for the month of August, 1893, which left a balance of five dollars; that for the months of September, October, November, and December, 1893, and of January and February, 1894, he collected nothing; that the defendant in June, 1893, gave or sent him a notice, dated April 5, 1893, in regard to these premises: "From this date you will please collect your rent from Mr. J. D. Mc-Bain, as I have disposed of my store to said McBain"; and that he received from the defendant after he had sent the defendant a bill, a second notice, which was dated December 7, 1893, and was as follows: "I have just received by mail a bill sent, I presume, by you, and which appears upon its face to be a claim for store rent of $117.50. When I sold my business to Mr. McBain in April last, I notified you that my tenancy ceased. You have since collected your rents from Mr. McBain, who occupies the store and owns the business conducted therein. I therefore very respectfully decline to recognize your claim." The plaintiff also testified that he received a further notice from the defendant, which was dated February 23, 1894, and was as follows: "Without admitting any liability for back or future rent but to protect my rights pending the appeal of the suit brought by you against me, I hereby notify you that I shall, on March 31st, 1894, quit and deliver up the premises now alleged by you to be held by me as your tenant at 34 Dearborn Street in this city"; that, as he recollected, he received no other communications from the defendant; and that he presented bills for rent at the store every month.

Upon cross-examination, the plaintiff testified that he lived next door to the store, and had so lived for at least twenty-

five years prior to the time of the trial; that he got the rent for the month of April, 1893, the last of the month of May, 1893; that the rent for the month of April was due on the 1st of May; that the April rent "was paid in the store by Mr. McBain, who was a young man that the defendant claimed to sell out to"; that he knew at the time he received the first notice that the defendant then claimed to have sold out on the 1st of April, 1893, to McBain; that when McBain paid the April rent he told the witness either that he had bought the defendant out, or was going to buy him out, and said something about having given a mortgage to the defendant in part payment; that McBain paid the May rent somewhere from the first to the middle of June; that McBain paid all the rent that was paid there after the 1st of April, 1893, and the June rent was paid about the 1st of July; that when he received the first notice he had a conversation with the defendant, who himself handed the notice to the witness, who was at the time in the store, and that McBain was present; that on the day the notice was received by the witness the defendant wanted to know if the witness had not got the notice, and the witness told him he had not; that the defendant turned to a drawer and took the notice out, and handed it to the witness; that at the time the witness received the notice he read it; that after the rent was not paid at the store, he sent a bill to the defendant in the fall of the year; and that he "often went into the store and asked the question if they had no money for" him.

James B. McBain was called as a witness by the plaintiff, and testified, in substance, that he was a druggist, and on April 4, 1893, took charge of the store at 34 Dearborn Street, and remained there until February, 1894, and during this period received rent bills for the store from the plaintiff every month; that he had not in his possession the rent bills for the months of May, June, July, or August, 1893; that they had been in his possession, but had become lost in some way; that he had in his possession a bill presented to him after the 1st of August; and that the bill in question ran to the defendant, as did the other bills throughout the time that the witness was in the store, and the bill was in the same form as the other bills.

Upon cross-examination, the witness testified, among other

things, that the bill spoken of as presented to him after the 1st of August was not receipted, and he never paid a cent of rent after that bill was made out; that he executed a mortgage and note, which were put in evidence by the defendant, the note being for $1,500, dated April 4, 1893, signed by the witness, and payable to the order of the defendant, and on which there were various indorsements of payments, and the mortgage being in ordinary form to secure the above note and covering the personal property contained in the store, signed by the witness and running to the defendant; and that the witness thought that the defendant was in the store from the 4th of April up to November or December, 1893, as often as once a week.

The defendant testified, in substance, that he had occupied the store in question since about 1882 up to the time he made a sale of the store and his business to McBain, which was on April 4, 1893; that McBain gave the note and mortgage already referred to; that after the sale to McBain he wrote to the plaintiff the first notice above set out, and went to the plaintiff's house to deliver it; that he rang the bell three different times, and, as no one appeared at the door, he then carried the note into the store and instructed one of the clerks to deliver it to the plaintiff; that he first saw the plaintiff after that on the first day of May, 1893, at the store; that the plaintiff said, " Have you sold out here? " and he answered, " Yes, did n't you get your notice? " to which the plaintiff replied, " This is the first I have heard of it"; that the witness then spoke to his clerk and asked him if he had n't delivered the notice, and he said he had not seen the plaintiff; that the witness then went to a drawer and took the notice and delivered it to the plaintiff; that the plaintiff read it, but did n't say anything; that there was no other conversation with reference to this matter; that he did not receive any kind of notification or information from the plaintiff that the rent was in arrears until he got the bill in December, 1893; that the plaintiff did not in any way inform him, between the time he got that notice and this time, that he was looking to him for the payment of the rent; that he had not received any rent bills; that he delivered the keys of the store to McBain at the time of the sale; and that they were the same keys which the plaintiff gave to the witness when he went into the store in 1882.

Upon cross-examination, the witness testified, among other things, that McBain had formerly worked for him as clerk; that when the bill of sale was given to McBain the witness did not remove his sign from the building; that the sign remained there from the last of April, 1893, until the following March; that the witness did not remember seeing any other sign on the outside of the premises, and he made no objection to McBain to his sign remaining there; that when he sold out he had in the store billheads or prescription blanks with his name on them, and that he did not remove these.

At the conclusion of the evidence, the defendant admitting that the amount claimed was due if he was a tenant of the plaintiff during the time, the judge directed the jury to return a verdict for the plaintiff in both cases. If the ruling was right, judgment was to be entered for the plaintiff in each case; otherwise, judgment was to be entered for the defendant.

*G. R. Swasey & R. H. Higgins*, for the defendant.

*R. F. Sturgis*, for the plaintiff.

BARKER, J. Considered as a notice intended to terminate the tenancy, the original notice did not comply with the provisions of the statute. Pub. Sts. c. 121, § 12. But if the plaintiff knew that the notice was intended to terminate the tenancy, he might so act as to preclude himself from objecting that the notice was insufficient. *Boynton* v. *Bodwell*, 113 Mass. 531, 537. We are of opinion, however, that the evidence would not justify a finding for the defendant. Assuming that on May 1, 1893, the plaintiff knew from reading the notice that the defendant intended to terminate his tenancy, the plaintiff upon that occasion did nothing to show that he waived the defects of the notice. Thereafter he neither saw nor had any communication from or with the defendant until December 1, 1893. During the interval he continued to make out bills against the defendant monthly for the rent, and to attempt to collect them at the store as usual, going there often and asking if they had no money for him, and receiving and crediting to the defendant whatever payments he received there. These facts could not justify the defendant in assuming that the plaintiff had released him, or lead him reasonably and properly to believe that the plaintiff had waived the defects of the notice. On the con-

trary, the plaintiff's conduct was an assertion of the defendant's tenancy by a consistent attempt to collect the rent as due from him.

The evidence did not justify a finding that the defendant's tenancy was terminated by transfer of the tenancy and possession with the plaintiff's knowledge and acquiescence. Although the plaintiff received payments from the defendant's vendee, the plaintiff did not treat the vendee as his tenant, but continued to claim that the defendant was the tenant, and made out the bills for rent against him.

*Judgment for the plaintiff in each case.*